UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CANDICE BUCKNER,

    Plaintiff,

v.                                                   Case No.: 3:13-cv-578-J-2-JRK

JOHN RUTHERFORD, in his
official capacity as Sheriff of Duval
County, Florida; OFFICER
CHALAS DEHLING, individually;
OFFICER KENNETH SPENCER,
individually; OFFICER DANNY
KNOWLES, individually; OFFICER
RICHARD VERCRUYSSE, individually;
OFFICER PAUL VOUTOUR, individually;
and OFFICER CHAD COLLIER,
individually,

    Defendants.

_____

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY UNDER THE DPPA AND MEMORANDUM OF LAW

Plaintiff, Candice Buckner, by and through undersigned counsel, and pursuant to Rule 56, Fed.R.Civ.P., hereby moves this Honorable Court for summary judgment in Plaintiff's favor as to liability on Counts I, III, V, VII, IX, XI, and XIII of the Complaint as there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law. In support thereof Plaintiff states as follows:

1.       The undisputed material facts establish that Defendants Dehling, Spencer, Knowles, Vercruysse, Voutour, and Collier (individual officer Defendants) accessed, obtained, disclosed and/or used Plaintiff's personal information and images stored on the DAVID system.

2. Furthermore, it is also undisputed that the individual officer Defendants accessed and/or obtained Plaintiff's personal information from DAVID for an unauthorized purpose.

3. Additionally, it is undisputed that when the individual officer Defendants accessed and/or obtained Plaintiff's personal information, they were acting as members of the Jacksonville Sheriff's Office while on the job and under the apparent authority of Defendant Rutherford.

4. The unlawful accessing of Plaintiff's DAVID records by Defendants violated Plaintiff's rights under 18 U.S.C. §2724 and 18 U.S.C. §2725(2), the Driver's Privacy Protection Act ("DPPA") as a matter of law.

WHEREFORE, Plaintiff, Candice Buckner, respectfully requests entry of summary judgment in her favor against Defendants as to liability on Counts I, III, V, VII, IX and XIII.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The undisputed material facts establish that Plaintiff is entitled to judgment as a matter of law against Defendants on Counts I, III, V, VII, IX, XI, and XIII set forth in the Complaint. Accordingly, Plaintiff's Motion for Partial Summary Judgment should be granted.

**I.     Facts**

The undisputed facts upon which this motion is based are as follows:

**A.     Defendant Dehling (Count I)**

On August 15, 2012, Defendant Dehling accessed Plaintiff's personal information on the DAVID database because Dehling was attempting "to ascertain the identity of a JFRD member [she] had interacted with." *See* Memorandum to Sergeant D. E. Smith from Dehling dated November 15, 2012 attached hereto as Exhibit "A-1". A Florida Department of Law Enforcement ("FDLE") investigation concluded that Defendant Dehling's query was "not done

as part of any law enforcement or business matter." *See* FDLE Memorandum, Case No. 35172, dated February 26, 2013 attached hereto as Exhibit "A-2".

B. **Defendant Spencer (Count III)**

On August 15, 2012, Defendant Spencer accessed Plaintiff's personal information on the DAVID database because he was "curious to see what she looked like or if [he] had seen her at work before." *See* Memorandum to Lt. S. D. Douberly from Spencer dated November 15, 2012 attached hereto as Exhibit "B-1". FDLE concluded that his access was "not done as part of a criminal case or for any investigative purpose." *See* FDLE Memorandum, Case No. 35171, dated February 4, 2013 attached hereto as Exhibit "B-2".

C. **Defendant Knowles (Count V)**

On August 16, 2012, Defendant Knowles accessed Plaintiff's personal information on the DAVID database and ran a query on Plaintiff out of "curiosity" because he had seen Plaintiff in the news. *See* FDLE Memorandum, Case No. 35176, dated February 26, 2013 attached hereto as Exhibit "C-1". Defendant Knowles' DAVID query was "not done as part of any law enforcement or business matter." *Id.* Defendant Knowles specifically admitted that he "ran the name Candice Buckner on DAVID after reading an article on Jacksonville.com involving firefighters." *See* JSO Intradepartment Correspondence to Lt. Brett Sharp from Knowles dated November 14, 2012 attached hereto as Exhibit "C-2'. Knowles "ran the name [of Plaintiff] purely out of curiosity to determine if it was possibly a firefighter that works in Zone 1." *Id.*

D. **Defendant Vercruysse (Count VII)**

On August 16, 2012, Defendant Vercruysse accessed Plaintiff's personal information on the DAVID database and admitted such. Specifically, he watched a news program featuring Plaintiff. *See* Memorandum to Asst. Chief R.L. Lendvay from Vercruysse dated November 22,

3

2012 attached hereto as Exhibit "D-1". *Id.* Defendant Vercruysse conceded his inquiry was "not work related." *Id.* The Bureau of Standards for the Florida Department of Law Enforcement found that Defendant Vercruysse "utilized the DAVID database to query an individual for no legitimate law enforcement purpose." *See* FDLE Memorandum, Case No. 35173, dated January 11, 2013 attached hereto as Exhibit "D-2".

### E. Defendant Voutour (Count IX)

On August 16, 2012, Defendant Voutour "utilized the DAVID database to query [Plaintiff] for no legitimate law enforcement purpose." *See* FDLE Memorandum, Case No. 35175, dated January 11, 2013 attached hereto as Exhibit "E-1". Defendant Voutour queried Plaintiff "out of curiosity." *Id.* Defendant Voutour's admitted personal reason for accessing Plaintiff's DAVID records was because Plaintiff "was in the news for a questionable fundraiser involving the death of a firefighter," and he was "checking to see if she was one of the local firefighters that [he] frequently responds to calls with." *See* JSO Intradepartment Correspondence to Lt. D.L. Patterson from Vontour dated November 9, 2012 attached hereto as Exhibit "E-2".

### F. Defendant Collier (Count XI)

On March 14, 2012 and July 6, 2012, Defendant Collier entered Plaintiff's information into the DAVID database. *See* Summation from JSO Internal Affairs Case 2012-00550 dated April 12, 2013 at p.3. attached hereto as Exhibit "F". At the time Defendant Collier accessed Plaintiff's personal information on the DAVID database, he knew that he was using DAVID for a non-law enforcement related purpose. *Id.* at p. 34.

### G. Defendant Rutherford (Count XIII)

Defendant Rutherford acknowledged that seven members of the Jacksonville Sheriff's Office accessed Plaintiff's records in an unauthorized fashion. *See* Letter from Sheriff

Rutherford to Chief Maureen Johnson dated January 11, 2013 attached hereto as Exhibit "G". The officers received counseling. *Id.*

## II. Summary Judgment Standard

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *See Mize v. Jefferson Board of Education*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publishing Company*, 9 F.3d 913, 919 (11th Cir. 1993). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger v. Harrington*, 381 F.3d 1243, 1247 (11th Cir. 2004).

The party seeking summary judgment bears the initial burden of demonstrating to the court by reference to the record, that there are no genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 424, 248 (1986). In determining whether summary judgment is appropriate, a court "must view all evidence and make all

reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citing *Dibrell Brothers International, S.A., v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir. 1994).

**III.    Violation of 18 U.S.C. 2724(a) and 18 U.S.C. 2725(2)**

The undisputed material facts establish that Plaintiff is entitled to judgment as a matter of law for a violation of her rights under DPPA as alleged in Counts I, III, V, VII, IX, XI, and XIII of the Complaint. Accordingly, Plaintiff's Motion for Partial Summary Judgment should be granted.

   **a. Liability of Individual Officers**

18 U.S.C. § 2724 creates a civil cause of action against an individual "who knowingly obtains, discloses, or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to who the information pertains, who may bring a civil action in the United States District Court." 18 U.S.C. § 2725 defines personal information as information that "identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3). "Highly restricted personal information," defined in § 2725(4), is "an individual's photography or image, social security number, medical or disability information." 18 U.S.C. § 2725(4).

18 U.S.C. § 2721(b) provides the only permissible uses for personal information contained in a motor vehicle record:

> (b)    Permissible Uses.— Personal information referred to in subsection (a) shall be disclosed for use in connection with matters of motor vehicle or driver safety and theft, motor vehicle emissions, motor vehicle product alterations, recalls, or advisories,

performance monitoring of motor vehicles and dealers by motor vehicle manufacturers, and removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of titles I and IV of the Anti Car Theft Act of 1992, the Automobile Information Disclosure Act (15 U.S.C. 1231 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), and chapters 301, 305, and 321–331 of title 49, and, subject to subsection (a)(2), may be disclosed as follows:

(1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

(2) For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.

(3) For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only—

(A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and

(B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

(4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

(5) For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.

(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

(7) For use in providing notice to the owners of towed or impounded vehicles.

(8) For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.

(9) For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49.

(10) For use in connection with the operation of private toll transportation facilities.

(11) For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

(12) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

(13) For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.

(14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

18 U.S.C. § 2722(a) makes clear that § 2721(b) contains a complete, exclusive list of the permissible reasons to access a motor vehicle record: "[i]t shall be unlawful for any person to knowingly to obtain or disclose personal information from a motor vehicle record, for any use not permitted under section 2721(b) of this title."

Here, Defendants Dehling, Spencer, Knowles, Vercruysse, Voutour, and Collier admitted that they obtained and/or used Plaintiff's personal information out of curiosity, to determine if

they knew Plaintiff and interacted with her, or to see what she looked like. *See* Exhibits "A-G". Thus, the individual Defendant officers have admitted to obtaining and/or using Plaintiff's personal information for purposes not permitted under the statue. Further, the law enforcement officers here operated with apparent authority as employees and/or agents of Defendant Rutherford and were each officially counseled by Defendant Rutherford. *See* Exhibit "G". Accordingly, all Defendants are liable to Plaintiff.

### b. Individual Defendants Not Entitled to Qualified Immunity

In *Collier v. Dickinson*, the Eleventh Circuit held that the DPPA creates a statutory right to privacy and the plain language of the statute provided "fair warning" to the defendants for purposes of qualified immunity. *See Collier v. Dickinson*, 477 F.3d 1306, 1311 (11th Cir. 2007). In that case, the plaintiffs asserted DPPA and §1983 claims against state officials of the Florida Department of Highway Safety and Motor Vehicles for selling plaintiffs' personal information to a third party. *Id.* at 1307. The court found that defendants were not entitled to qualified immunity.

Applying *Collier*, first, the individual Defendants here are not entitled to qualified immunity. The plain language of the statute is specific enough on its own to clearly establish that the particular acts undertaken by the individual Defendants were unlawful. *Collier*, 477 F.3d at 1311-12. The statute clearly established the unlawfulness of the defendants' actions: any "person who knowingly obtains...personal information, from motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains...." 18 U.S.C. § 2724. Additionally, a court within this district has previously found that the "case law defining the reach of the DPPA gave fair notice to Defendants," and the "case law defining the statute's scope could be no clearer." *Id. See English v. Parker*, 2011 WL 1842890 (M.D.Fla. May 16, 2011) (granting summary judgment as to liability under the DPPA where the defendant,

9

a law enforcement officer, accessed the plaintiff's personal information through DAVID for personal use).

Here, the statute is clear, the instant case is indistinguishable from *English*, the Eleventh Circuit, in 2007, found that the plain language of the DPPA and prior case law provided fair warning to defendants, and the undisputed facts establish that Defendants obtained and/or accessed Plaintiff's personal information for an unauthorized purpose. Accordingly, the individual officer Defendants are not entitled to qualified immunity and are liable, as a matter of law, to Plaintiff.

### c. Defendant Rutherford Liable for the Individual Officer Defendants' Violations Under the Doctrine of Respondent Superior

Because the individual officer Defendants officers in this case are liable as a matter of law and they violated the DPPA law while on the job and acting with apparent authority of Defendant Rutherford, Defendant Rutherford is vicariously liable for their actions.

Unquestionably, the DPPA, a privacy-based tort action, imposes vicarious liability on employers. *Margan v. Niles*, 250 F.Supp.2d 63, 74 (N.D.N.Y. 2003); *Schierts v. City of Brookfield*, 868 F.Supp. 2d 818, 822 (E.D. Wis. 2012). "When Congress creates a tort action, it legislates against a legal backdrop of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Margan*, 250 F.Supp.2d at 74. While imposing liability on agents should have a deterrent effect on violations of DPPA, "[b]y imposing vicarious liability upon employers, they will have incentive to adopt appropriate policies and procedures to prevent the misuse of motor vehicle records, thereby furthering the DPPA's goal of protecting individuals' personal information found in motor vehicle records." *Id.* In sum, "[b]ecause there is nothing in the DPPA suggesting that it was not intended to impose vicarious liability and 'application of the apparent authority doctrine' advances the [DPPA's]

goals and produces no inconsistencies with other [DPPA] provisions, ... a theory of [vicarious] liability is an appropriate operative theory of liability under the statutes." *Id.*

Courts have held that police agencies must have control over employees potential misuse of access to private information. In *Margan*, the Court mused that "[t]his is particularly so in the present situation where law enforcement personnel are in a somewhat unique situation wherein they have relatively easy, free, and unfettered access to motor vehicle records, which access can lead to unchecked abuse." *Margan*, 250 F.Supp.2d at 74.

Vicarious liability, and not *Monell* liability, governs DPPA. *Schierts*, 868 F.Supp.2d at 822. In *Schierts*, the defendant municipality argued that they would only be vicariously liable under DPPA if the "violation was caused by municipal policy, practice, or custom." *Id.* at 822. In rejecting the municipality's argument, the court concluded that "municipalities are vicariously liable under the DPPA to the same extent as any other defendant." *Id.* Importantly, the court noted that municipality had "not pointed to anything in the language or legislative history of the DPPA indicating that congress intended to incorporate the limited form of municipal liability that applies in §1983 cases into the DPPA.

Here, because the individual officer Defendants who violated DPPA were on the job and acting with the apparent authority of the Jacksonville Sheriff's Office, Defendant Rutherford is vicariously liable for their acts. *See* "Ex. A"; Ex. "B-2"; Ex. "C-2"; Ex. "D-2"; Ex. "E-1"; Ex. "F-1", and Ex. "G".

## VIII. Conclusion

In light of the foregoing, the undisputed material facts establish Plaintiff is entitled to judgment as a matter of law on counts I, III, V, VII, IX, XI, and XIII of the Complaint. As a result, Plaintiff's Motion for Partial Summary Judgment should be granted.

Respectfully submitted,

_____
Wm. J. Sheppard, Esquire
Florida Bar No.: 109154
Elizabeth L. White, Esquire
Florida Bar No.: 314560
Matthew R. Kachergus, Esquire
Florida Bar No.: 503282
Bryan E. DeMaggio, Esquire
Florida Bar No.: 55712
Jonathan W. Graessle, Esquire
Florida Bar No.: 102640
Sheppard, White, & Kachergus, P.A.
215 Washington Street
Jacksonville, Florida 32202
(904) 356-9661 telephone
(904) 356-9667 facsimile
Email: sheplaw@att.net
COUNSEL FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 22nd, 2014, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF System which will send a notice of electronic filing to the following:

**Jon R. Phillips, Esquire**
**Office of General Counsel**
**117 W. Duval Street, Suite 480**
**Jacksonville, Florida 32202**

**Paul A. Daragjati, Esquire**
**Office of General Counsel**
**Fraternal Order of Police**
**5530 Beach Boulevard**
**Jacksonville, Florida 32207**

I HEREBY CERTIFY that on January 22nd, 2014, a true and correct copy of the foregoing document and the notice of electronic filing was sent by United States Mail to the following non-CM/ECF participants:

N/A

_____
ATTORNEY

mlh[buckner.candice.msj]