THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CANDICE BUCKNER,

     Plaintiff,

                                Case No.: 3:13-cv-578-J-2-JRK

v.

                                **DISPOSITIVE MOTION**

JOHN RUTHERFORD, in his official
capacity as Sheriff of the Consolidated
City of Jacksonville, Florida; et al.,

     Defendants.

_____/

## DEFENDANT SHERIFF JOHN RUTHERFORD'S
## MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

     Defendant Sheriff John Rutherford ("Rutherford"), in his official capacity, pursuant to

Rule 56, Fed. R.Civ. P., requests that the Court grant summary judgment in his favor on all

claims against him in Plaintiff's Amended Complaint. (Doc. 1) In support of this motion,

Rutherford states that there is no genuine issue of material fact or law entitling the Plaintiff to

recover on her claims.

## MEMORANDUM OF LAW

## I.    THE PLAINTIFF'S CLAIMS AGAINST RUTHERFORD

     The Plaintiff's complaint contains 21 counts, 3 of which pertain to the Sheriff. Count

XIII (p. 17-18) alleges that Sheriff Rutherford in his official capacity, *i.e.*, the City of

Jacksonville, is subject to municipal liability for the alleged DPPA violations by the individual

co-defendants, on a theory of strict vicarious liability, i.e., *respondeat superior.* Included in the

1

prayer for relief is a claim for punitive damages. Count XIV (p. 18-19) is a claim that the City is vicariously liable under 42 U.S.C. § 1983 for the individual co-defendants' alleged violations of Buckner's statutory privacy rights under DPPA. This Count, too, asserts that the City is liable based entirely on strict-liability *respondeat superior*; the Complaint does not allege that the City caused the violation through any policy, custom, or practice. This Count also includes a demand for punitive damages. Count XXI (p. 23-24) alleges a state law claim against the City for Intentional Infliction of Emotional Distress, again based entirely on a theory of strict vicarious liability for the actions of the individual co-defendants; punitive damages are demanded.

## II.  STATEMENT OF FACTS

Taking the facts in the light most favorable to the Plaintiff, the facts are as they are recited in the individual co-Defendants' Motion for Summary Judgment. (See Doc. 34, and its attachments with declarations from the co-defendants). The City adopts the co-Defendant's recitations of the facts to the extent that they are relevant to the City's liability. For purposes of this motion, suffice it to say that the origin of this lawsuit was in a series of domestic disputes between co-Defendant Collier and the Plaintiff. (See Exhibit 1, Plaintiff's dep., at 14). Plaintiff is a City of Jacksonville firefighter. (Id. at 7). In 2012, the plaintiff appeared in a state of partial undress at a charity function at Whisky River. (Id. at 34-38). Subsequently the other co-defendants looked at her picture on DAVID. Co-defendant Collier's explanation for accessing the plaintiff's information is outlined in the Internal Affairs summation of its investigation into his conduct. (Doc. 28-11). The other co-Defendant's explanations are contained in their declarations.

2

There is no evidence in the record that the Sheriff, either individually or in his official capacity, accessed the Plaintiff's information. There is likewise no evidence in the record that the Sheriff knew the information was being accessed until after the fact–when the Internal Affairs investigation of Collier was conducted. The plaintiff herself had no idea that the co-defendants had looked at her photo until Collier told her that the other officers had been called into Internal Affairs because of it. (Plaintiff's dep., at 22-23). She has no evidence that any of them did anything to her other than the brief accessing of her information. (*Id*., at 19-20).

There is no record evidence that there is a widespread pattern of DAVID abuse. There is no evidence in the record that JSO tolerates DAVID abuse. To the contrary, JSO is clear that DAVID abuse is wrong and will not be tolerated. (See Internal Affairs summation and letter submitted by Plaintiff, Docs 28-11 in general and page 38 of Doc 28-11, in particular). (See also the following: Exhibit 2, JSO Information Bulletin 2010-2012, which shows that everyone with access to the system was trained and routine audits were conducted; Exhibit 3, JSO Bulletin 2011-126, to the same effect; Exhibit 4, Information Bulletin 2012-096, advising officers that misuse of the D.A.V.I.D. information could result in action against their Law Enforcement Certification. Exhibit 5, Information Bulletin 2012-129, more advice against misuse of D.A.V.I.D.).

The plaintiff contends that the co-defendants accessed the plaintiff's information by using their "apparent authority" as employees of the Sheriff. However, not every JSO employee has access to DAVID, which requires an application and approval by FDLE; it is not automatic as the Plaintiff seems to imply. (See Exhibit 6, Instructions on how to apply for a D.A.V.I.D. Digital

Certificate; Exhibit 7, FDLE Training Manual on D.A.V.I.D. system and other Criminal Justice Databases).

## III.    THE SUMMARY JUDGMENT STANDARD

The standard for granting a motion for summary judgment is well known to this Court and will not be belabored here.  *See, e.g.*, the extensive discussion of this standard in this Court's order in the case of *Pierre v. Gruler*, 2009 WL 383352 (M.D. Fla.), at *1-2.

## IV.    DPPA CLAIM AGAINST THE CITY

### A)    The City did not violate DPPA and is not vicariously liable under DPPA.

DPPA creates a private cause of action having three elements: that a defendant 1) *knowingly* obtained, disclosed or used personal information, 2) from a motor vehicle record, 3) for a purpose not permitted by the law.  18 U.S.C. s. 2724(2); *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King and Seves P.A.*, 525 F.3d 1107, 111 (11th Cir. 2008).

Under the plain language of the statute, a defendant can only violate DPPA by **knowingly** accessing DAVID information for an impermissible purpose. Logically, this must mean–at least–that an act of accessing the information must occur, and that the act of obtaining the information must be intentional and not accidental, negligent or inadvertent.  But more than that, it should mean that the defendant both knew that the plaintiff's protected information was being obtained, and that the reason for obtaining the information fell outside the permissible reasons for disclosure contained in 18 U.S.C. s. 2721. *Parus v. Kroeplin*, 402 F.Supp.2d 999, 1005-8 W.D. Wisc. 2005).  Even if the latter point were not true, it is an undisputed fact in this record that the City had no knowledge whatsoever regarding the accessing of the Plaintiff's information and consequently had no participation at all in doing so.  There is thus no reason to quibble over

whether the individual co-defendants knew they were violating the statute or not; the City did not access the information, and therefore should not be liable.

Congress did not define "knowingly" in DPPA. When Congress does not define a word, the Supreme Court has held that it means "merely proof of knowledge of the facts that constitute the offense." *Dixon v. U.S.,* 126 S.Ct. 2437, 2441 (2006).

The wording of s. 2724(a) suggests that Congress intended to apply the qualification of "knowingly" to all elements of a DPPA civil offense. That is, the defendant must *know* 1) he is obtaining protected information, and *know* 2) the uses proposed for the information. This is so because "knowingly" is an adverb modifying the verbs "obtain", "disclose" or "use". These verbs then are each modified again by a subordinate clause "for a purpose not permitted under this chapter." The adverb, the verbs and the subordinate clause thus form a single, harmonious until that is a clear and unambiguous expression of congressional intent.

Therefore, in order to defeat summary judgment for the Sheriff, the Plaintiff must point to specific facts showing that the Sheriff or the City knew the information was being obtained and that the use intended was for a purpose not permitted by DPPA. *Thomas v. George, Hartz, Lundeen, Fulmer, Johstone, King and Seves PA*, 525 F.3d at 1111-1114; *Bailey v. Daniels*, 679 F.Supp.2d 713 (W.D. La. 2009). "The Act imposes liability only on a defendant who 'knowingly' discloses information for an impermissible 'purpose'. So liability turns on what a defendant knows and on the defendant's purpose." *Welch v. Theodorides-Bustle*, 753 F.Supp. 2d 1223, 1226 (N.D. Fla. 2010).

The plaintiff, of course, is arguing that the statute's plain language does not matter, and that the City is liable because the officers acted with "apparent authority" and therefore the City

is strictly liable under *respondeat superior* despite the City's complete lack of fault or knowledge. The Plaintiff's position is not sound. As noted in the City's Response (Doc. 33) to Plaintiff's Motion for Partial Summary Judgment (Doc. 28), the doctrine of "apparent authority" in this context does not apply. None of the Defendants made any representations to the Plaintiff, and Plaintiff did not rely on anything the Defendants said to her. See *Mallory & Evans Contractors & Engineers, LLC v. Tuskegee University*, 463 Fed. Appx. 862 (11th Cir. 2012)(apparent authority exists when a principal represents that an agent has authority to act and a third party reasonably relies on that representation to his detriment). Plaintiff appears to be conflating the concepts of *respondeat superior* and apparent authority.

The plaintiff in the case of *Donna Jane Watts v. City of Palm Beach, et. al*, Case No. 9:12-cv-81406-DMM (S.D. Fla.), made the same argument Ms. Buckner makes–that a number of officers were liable to her, and their employer was too, based on vicarious liability. Judge Middlebrooks, in the context of considering a Motion to Dismiss filed by the Chief of the Juno Beach Police Department, Brian Smith, ruled that vicarious liability of a supervisor of an officer who violated DPPA could not be sustained absent some fault on the part of the supervisor. See *Watts, supra*, Doc. 513, Order on Defendant Brian Smith's Motion to Dismiss. The Court first unambiguously answered NO to the question of whether an individual supervisor (Smith) could be individually liable for another's DPPA violation if Smith did not personally access the DAVID database. *Id.*, p. 7. The Court then went on to carefully consider whether vicarious liability could apply under DPPA to Smith in his supervisory capacity–the same issue now before this Court. *Id.*, p. 8-10. After citing and extensively quoting *Margan v. Niles,* 250 F.Supp. 2d 63

(N.D. N.Y. 2003)–the case relied on by Buckner, Judge Middlebrooks rejected the conclusion

that strict vicarious liability applies under DPPA:

> As stated previously, the Eleventh Circuit has not yet addressed the
> question of municipal vicarious liability under the DPPA.  Even
> assuming, however, that the Court were to adopt this theory of
> vicarious liability extending to municipalities and municipal
> officers, I find that in accordance with Eleventh Circuit theories of
> employer vicarious liability, some knowledge of the wrongful
> conduct attributable to the municipality or official must be
> adequately alleged.  The Complaint is devoid of any factual
> allegation regarding Smith's knowledge of any DPPA violation.
> Accordingly, I find there is no basis for allowing Plaintiff's DPPA
> claim to proceed against Smith under any DPPA vicarious liability
> theory.

*Id.*, p. 10.

This interpretation is supported by the fact that it appears that § 1983 qualified immunity

analysis also applies in the DPPA context to individual liability analysis.  *Welch v.

Theodorides-Bustle*, 753 F.Supp.2d 1223, 1226 (N.D. Fla. 2010)(under both DPPA and §1983, a

public employee may invoke qualified immunity defense).  The court in *Welch* also recognized

that only a defendant who "knowingly" commits acts that violate the Act can be held liable–a

concept antithetical to imposing vicarious liability:

> The Act explicitly creates a private right of action against a "person
> who *knowingly* obtains, discloses or uses personal information"
> other than for a permissible "purpose".  *Id.* § 2724(a)(1) (emphasis
> added).  Violations of the Act also are actionable under 42 U.S.C.
> §1983.  *See Collier v. Dickinson*, 477 F.3d 1306, 1310-11(11th
> Cir.2007).

> As this language makes clear, a defendant who had a role in
> improperly disclosing a plaintiff's personal information is not
> necessarily liable to the plaintiff.  The Act imposes liability only on
> a defendant who "knowingly" discloses information for an

impermissible "purpose." So liability turns on what a defendant knows and on the defendant's purpose.

The same words are not used in §1983, but §1983 ordinarily requires that a defendant act intentionally or with deliberate indifference. So a defendant's knowledge remains part of the analysis.

Id.

Likewise, a Court in the Middle District of Florida has also rejected the plaintiff's pure vicarious liability theory. In *English v. Parker*, 2011 WL 1842890, *5 (M.D. Fla.), Judge Presnell denied summary judgment to a plaintiff making the same argument Ms. Buckner proffers:

Mark English contends that the Sheriff's Office is responsible for the DPPA violations of Ryan English under the doctrine of respondeat superior. (Doc. 47 at 10-11). However, he does not set forth the standard for imposing liability on the basis of respondeat superior, much less argue that the conduct of the Sheriff's office satisfies that standard. The Court cannot grant summary judgment as to respondeat superior liability on such a record.

*Id.*

Here, the total evidence proffered by Plaintiff to support her theory as to the City is her Exhibit G (Doc. 28-11). That document is the Internal Affairs investigation summary into co-defendant Collier's access of D.A.V.I.D. to view Plaintiff's information. Collier claimed that he was investigating whether the Plaintiff was committing the crime of Driving on a Suspended License in violation of F.S. § 322.34; this is permissible under DPPA. Collier also testified Buckner asked him to run her information. It is questionable that anyone could be held liable under DPPA for accessing Ms. Buckner's information at her own request. Regarding the other

co-defendants, they are alleged only to have looked at the Plaintiff's picture, a picture that

Plaintiff has herself undoubtedly displayed many times to many people. Indeed, images of the

Plaintiff's face and images of her half-dressed at the Wiskey River incident, can readily be seen

merely be Googling "Candice Buckner Jacksonville." The co-defendants argue that they did not

violate DPPA. The City adopts their arguments in that regard.

More to the point, the Plaintiff's evidence against the Sheriff in his official capacity

consists entirely of p. 38 of Doc 28-11–a letter from Sgt. Lolita Smith that reads in its entirety:

> Re: Misuse of Personal Information
>
> The Jacksonville Sheriff's Office concluded six administrative investigations on December 5, 2012. During the investigation, it was discovered that on August 15-16, 2012, seven employees with the Sheriff's Office compromised an individual's record with an unauthorized access. The investigation has revealed that there has been no harm and/or harm will be unlikely to occur to the party whose information was accessed. On December 5, 2012, the owner of the compromised record was notified by the sheriff's office. The employees were charged with Improper Use of a Computer. The employees each received a formal counseling. The Jacksonville Sheriff's Office shall continually send out correspondence agency wide that reminds employees that the use of D.A.V.I.D. is for Criminal Justice Purposes Only.

In addition, the other exhibits filed contemporaneously herewith show that JSO actively

seeks to discourage DPPA violations. Nor is there any evidence in this record that such

violations either frequently occur or are ever tolerated.

The Plaintiff's response to this is a strained reading of the order in *Watts*, and a weak

argument that *English* is unpersuasive. The Plaintiff's claims rest entirely on two poorly

reasoned opinions from Wisconsin and New York. Judge Middlebrooks in *Watts* rejected the

reasoning of these two opinions for good reasons. Worth noting, too, is that the *Margan* court

cited an Eleventh Circuit case in support of its ruling on vicarious liability, *Quick v. People's Bank of Cullman County*, 993 F. 2d 793 (11th Cir. 1993). Yet *Quick* does not support either the *Margan* court's point or Buckner's. The *Quick* court said that vicarious liability can only be applied in the RICO context if the enterprise derived some benefit from the violation. *Id.* at 797. Here, the Sheriff's office derived no palpable benefit from the actions of the co-defendants. And if it did derive some benefit, then the information must have been accessed for a law enforcement purpose, and none of the defendants would be liable in this case.

Another reason why strict vicarious liability should be rejected here can be found in the reasoning of *Monell* and its progeny. As discussed below, it is black letter law that there is no strict vicarious liability under 42 U.S.C. § 1983. This conclusion was reached on a statute that does not even contain the word "knowingly:"

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party in an action at law, . . ."

*Id.*

That Congress inserted the word "knowingly" in the DPPA suggests that it was making it clear that an innocent defendant cannot be held liable. If Congress intended vicarious liability without fault to apply, why did it not just say so?

Thus, the Plaintiff's evidence shows that JSO does not tolerate improper use of D.A.V.I.D., and did not fail to act appropriately when the access of Ms. Buckner's D.A.V.I.D. information was brought to JSO's attention. There is thus no basis upon which to impose vicarious liability.

**B.     DPPA is unconstitutional.**

Congress lacks the power under the Commerce Clause to regulate the use of state information that is not "in commerce." On this record, the accessing–without more–of Plaintiff's driver's license information through the State of Florida's/Department of Highway Safety and Motor Vehicles' D.A.V.I.D. system by the individual officer defendants did not place that information "in commerce" such that Congress can constitutionally regulate its disclosure under the DPPA, since the alleged use does not constitute economic activity.

Congress passed DPPA pursuant to its power under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, in order to regulate the disclosure and use of drivers' personal data as "things in commerce." Plaintiff seeks relief under a provision of the act that is beyond Congress's authority over interstate commerce because here the act is relied upon to regulate entirely *noncommercial* sharing of drivers' personal information within a state's law enforcement community. This provision exceeds Congress's enumerated powers under the Commerce Clause because the record demonstrates that the information at issue is not a "thing in commerce."

In *Reno v. Condon*, 528 U.S. 141 (2000), the Supreme Court concluded that the DPPA was a valid exercise of Congress's commerce power. However, *Reno* involved a different provision of the law-one limiting disclosure for the purpose of bulk mail advertising-than the one at issue in this case, and vastly different facts. *Id*. at 143-145, 148.[1] Thus, *Reno* is only helpful

---

[1] The Court further underscored the commercial context of the driver data as the basis for congressional authority by noting:

> The motor vehicle information which the States have historically *sold* is *used by insurers, manufacturers, direct marketers, and others engaged in interstate commerce* to contact drivers with customized solicitations. The information also is used *in the stream of interstate commerce by various public and private entities* for matters related to interstate motoring. Because drivers' information is, *in this context*, an article of commerce, *its sale or release into the interstate stream of business* is sufficient to support congressional regulation.

for the general proposition that Congress enacted DPPA pursuant to its commerce power. *Reno* does not control the question presented by the record in this case: is driver information "in commerce" when a law enforcement officer using a channel restricted to law enforcement functions improperly obtains driver information for a non-commercial purpose such that penalization of that access is within Congress' power under the Commerce Clause? Because the information in this situation is not in commerce and is unconnected to *any* economic activity, the answer must be no.

The Supreme Court's holding in *Reno* that DPPA is constitutional was based on the assumption that the driver information subject to the Act is a "thing in interstate commerce" that is being "sold" for use in the private sector by private businesses. It is "in this context" that the "sale or release" of the information "into the interstate stream of business" was deemed "sufficient to support congressional regulation." Here, Plaintiff seeks to extend DPPA to a law enforcement context involving internal State administration and no economic activity–no "commercial concerns" arise to predicate congressional action under the Commerce Clause. The City does not dispute that the commerce power extends to States insofar as they sell or offer to sell driver information; rather, its point is that the commerce power cannot supply the authority to legislate in the context presented here, where the State makes driver information available to state law enforcement agencies pursuant to its police power and law enforcement officers improperly access the information for non-law enforcement but for non-economic reasons.

Stated otherwise, DPPA's constitutionality in the noncommercial context of law enforcement cannot be established by reliance on the "thing in interstate commerce" category of

---

*Id*. at 148 (emphasis added).

commerce power (the "third" category).[2]  Particularly, the aggregate effects test applied in *Gonzales v. Raich*, 545 U.S. 1 (2005), cannot be satisfied on this record. *Gonzales* was a lawsuit over a California law allowing individuals to grow marijuana for their individual medical use. The Supreme Court's opinion rested on the fact that marijuana, even if grown and used for purely personal purposes, involved "a fungible commodity for which there is an established, albeit illegal, market." *Id*. at 18. The Court concluded that Congress could rationally find that privately grown marijuana would likely enter the stream of interstate commerce and have a substantial effect on prices and market conditions. *Id*. at 19. The "regulation is squarely within Congress' commerce power because production of the commodity meant for home consumption, be it wheat or marijuana, has a substantial effect on supply and demand in the national market for the commodity." *Id*.

The Court said that the test was not whether the respondents' activities in the *aggregate in fact* would substantially affect interstate commerce, but whether Congress could rationally believe that they might do so.  *Id*. at 22.  The Court also noted that the matters regulated were "quintessentially economic" in that federal law prohibiting marijuana cultivation "regulates the production, distribution, and consumption of commodities for which there is an established, and lucrative interstate market." *Id*. at 25. As such, the federal law in question "directly regulates economic, commercial activity." *Id*. at 26.

But the situation in this record is different. The records at issue in this case are not like marijuana or wheat. They are State public records essential for carrying out State police power functions, and their utilization for law enforcement purposes has no logical connection to

---

[2] The other two categories being "channels of interstate commerce" and "activities that substantially affect interstate commerce." *Nat'l Fed. of Indep. Bus. v. Sebelius*, ___ U.S. ___, 132 S. Ct. 2566, 2578 (2010).

commerce: *i.e.*, unlike crops such as marijuana and wheat, driver records are not "quintessentially economic." On the contrary, driver records would have to exist regardless of whether any ancillary and separate downstream commercial usage arose. The disconnection between the accessing of driver data by law enforcement officers on the non-public D.A.V.I.D system and the sale of driver data into commerce is underscored by the reality that such sales are in bulk *(see Reno*, 528 U.S. at 143)–there is no market for individual driver license documents. Thus, there is simply no rational basis to conclude that Plaintiff's driver records are likely, following their isolated access by a few police officers through D.A.V.I.D., to find their way into the stream of interstate commerce. Nor is there any rational basis to infer that, in some aggregate sense, such discrete instances of individual police access to individual driver data could have any substantial effect on any prices or market conditions. Indeed, any claimed connection between such discrete instances of access to an individual's driver record and the market for bulk sales of driver data would be even more fanciful than those held insufficient as a matter of law in, *e.g., United States v. Lopez*, 514 U.S. 549 (1995)(Gun-Free School Zones Act exceeds commerce power); *United States v. Morrison*, 529 U.S. 598 (2000)(Violence Against Women Act not supportable under Commerce Clause). Thus, where, as here, no showing has been made that the activity substantially affects interstate commerce, that category of commerce power cannot support congressional action and Plaintiff's Count XIII is unfounded as a matter of law.[3]

---

[3]  The City is aware of Judge Antoon's recent order in *Ela v. Orange County Sheriff's Office, et al.*, Case No.: 6:13-cv-491-Orl-28KRS (Doc. 80), upholding the constitutionality of the DPPA on similar facts. Respectfully, Judge Antoon construed *Reno* far more broadly than the Supreme Court appears to have intended. In *Reno*, the Supreme Court went to great lengths to underscore that the *context* presented was purely commercial: the State of South Carolina was selling driver data for use in the private sector. *See Reno*, 528 U.S. at 148. Judge Antoon's view seems to be that context does not matter: if there is any situation in which a thing happens to enter the stream of interstate commerce, then that thing is entirely regulable by Congress in any and all situations. Further, it matters not that driver data was obtained in the first instance by the States for entirely noncommercial safety and law-enforcement purposes-classic applications of the general police power, which belongs solely to the States and is denied to the federal government *(see, e.g., United States v. Lopez*, 514 U.S. 549, 566 (1995))–and that any sales of such data by a

Finally, while DPPA was enacted following a stalking incident, it was not enacted as an "anti-stalking police-power measure," but under the commerce power. It is axiomatic that the general police power belongs solely to the States. Thus, Congress has no more authority to enact a nationwide anti-stalking law than it did to enact the Gun-Free School Zones Act or the Violence Against Women Act. The Plaintiff's response to the above is essentially that the lower court in *Maracich v. Spears,* 2009 WL 2929323 (D.S.C.), rejected the notion that DPPA could be in any way unconstitutional. This opinion merely stands for the proposition that the DPPA is not unconstitutional when applied to commercial activity of law firms trolling for clients, not entirely non-commercial use, without more, by police officers. Accordingly, the City is entitled to summary judgment in its favor on Counts XIII and XIV of Plaintiff's Complaint.

### C.    If the officers did not violate DPPA, the City is not liable.

It should go without saying that the City cannot be held liable in this case unless the individual co-defendants are found to have violated DPPA. The co-defendants have argued that they did not. The City adopts their arguments and statements of facts in that regard, to the extent it benefits the City. The City would also note that, with respect to co-defendant Collier, the Plaintiff's filings include the Internal Affairs summation regarding why he accessed the

---

State are merely incidental downstream occurrences. Respectfully, the issue is whether Congress can regulate driver data in the entirely noncommercial context of law enforcement that *precedes* any incidental sale of the data. *Reno* simply does not address this issue. Nor, contrary to Judge Antoon's view, does *Reno* provide any support for upholding DPPA's constitutionality under the third category of commerce power ("thing in interstate commerce"). Indeed, the entire question of whether the activity of sharing driver data within a law-enforcement community has a substantial effect on interstate commerce is a misapprehension. There is simply no connection. If all States ceased to sell driver data, they would still need to compile the data and share them within their law-enforcement communities. The States' law enforcement usage of driver data has no impact on any commerce in those data. Hence, Judge Antoon further erred in his reliance on *Gonzalez, supra*, which dealt solely with the third category of the commerce power in holding that marijuana, a commodity crop, is regulable even if grown for purely personal consumption. For these reasons and as otherwise discussed herein, Judge Antoon erred in *Ela* in declining to hold DPPA unconstitutional as applied to the law-enforcement context presented here.

Plaintiff's driver license information.  (See Doc. 28-11 in general, and in particular pages 18-21).

The investigation revealed that Officer Collier had good reason to suspect, based on Clerk of Court records, that plaintiff's driving privileges had been suspended, and knew that plaintiff had been driving during the suspected period of suspension.  Driving a vehicle in Florida while knowing one's driving privileges have been suspended is a crime in Florida.  See, F.S. § 322.34(2)(2011).  Consequently, although the evidence in this case is that Officer Collier's motives for investigating the status of Buckner's driver license were personal, the fact remains that objectively it is not a violation of DPPA to access protected information to check on a reasonable suspicion that someone is committing the criminal offense of Driving on a Suspended License.

## IV.     42 U.S.C. § 1983 CLAIM FOR DPPA STATUTORY PRIVACY RIGHT VIOLATION

### A)     Municipal Liability under Section 1983–Generally

To prevail against a municipality in an action under 42 U.S.C. § 1983, a plaintiff must show that she was deprived of a right secured by the Constitution and laws of the United States.[8] The facts in the instant case, as outlined above, establish that the Sheriff, i.e., the City, did not violate DPPA.  Even if the facts did show, however, a violation by the co-defendants,  this would be manifestly insufficient to prove liability under Section 1983 in the absence of some fault on the part of the City or Sheriff.  To hold a municipality liable, not only must a plaintiff show the

---

[8] *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662 (1986); *Everett v. Napper,* 833 F.2d 1507, 1510; *Dollar v. Haralson County,* 704 F.2d 1540, 1542-43 (11th Cir.), *cert. denied,* 464 U.S. 963, 104 S.Ct. 399 (1983).  Section 1983 alone creates no substantive rights; rather it provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws.  *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2674 n. 3 (1979); *Wideman v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030, 1032 (11th Cir.1987).  An underlying constitutional right must exist before a § 1983 action will lie.  *Wideman,* 826 F.2d at 1032.

violation of an identifiable constitutional or important federal statutory right by tortious state action, but she or he must also prove that an official "custom" or "policy" was the "moving force" behind the alleged wrong. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also, Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Municipal liability should not be imposed when the municipality was not itself at fault. *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under §1983." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203 (1989) (citations omitted); *McMillan v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734, 1736 (1997) (a local government is liable under Section 1983 for its policies that cause constitutional torts). Thus, a municipality is not liable under Section 1983 solely for the acts of its employees. *Monell*, 436 U.S. at 690-695; *Daniels*, 474 U.S. at 328, 106 S.Ct. at 663 (" ... the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property.") (emphasis original); *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) (local government liability under Section 1983 cannot be based solely on the theory of *respondeat superior*); *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991) (section 1983 liability may be imposed on a governmental entity only when the violation is due to the existence of an improper policy or the absence of a policy).

Thus, for example, in *Gold*, the Eleventh Circuit held that a plaintiff's false arrest claim against the City of Miami could not stand where he had presented no evidence of prior incidents. In addition, the need to train was not "so obvious" as to put the city on notice in the absence of any prior incidents. *Id.* at 1351-52; *see also*, *McDowell v. Brown*, 392 F.3d 1283 (11th Cir.

2004) (noting that isolated incidents generally do not create liability); *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990) (finding no liability for a deputy sheriff's actions where "no evidence of a history of widespread prior abuse ... put the sheriff on notice of the need for improved training or supervision").

The Complaint seems to suggest that liability can be imposed on the instant facts because the individual co-defendants were formally counseled rather than punished more severely. If Plaintiff is suggesting that the fact that the officers were not punished severely enough to suit her constitutes ratification by the Sheriff of the conduct, there is no support for this proposition in Eleventh Circuit jurisprudence. It is certainly true, as noted in *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir. 1985) that a "...persistent failure to take disciplinary action..." can create an inference of ratification. In the absence of evidence that the Sheriff knew about this incident, and that it was but one of many similar, this argument fails legally. *See, e.g.*, *Burnette v. Ciolino,* 750 F. Supp. 1562, 1564-1565 (M.D.Fla. 1990)(citing to 5 shootings in a 5-year period in Lee County as "...nothing more than isolated incidents that clearly cannot be said to establish...a 'custom' or 'widespread practice...' as a matter of law); *Terrell v. City of Palm Bay,* 2010 WL 3895618 *5 (M.D.Fla.)(deficiencies in after-the-fact investigation of an incident, or even no investigation, cannot be used to prove that the flawed investigation was the moving force behind incident without showing a prior pattern of tolerating misconduct); *Fitch v. Scott*, 2005 WL 192028 *9 (M.D. Fla.)(even sheriff's personal participation in investigation of incident insufficient to show ratification in absence of proof of widespread abuse; showing the sheriff knew about the incident afterwards "does not mean that the deputy acted pursuant to a...custom.")

**B)      No liability based on Monell**

Applying the principles immediately above, summary judgment should be granted on this claim.  The Complaint alleges nothing to show either that the City caused the violation, or tolerated instances of misconduct such that it could be said that a widespread custom or practice existed.  The Plaintiff merely alleges that liability should attach to the City on the Section 1983 claim based on the very same theory she advanced for the direct DPPA violation–strict vicarious liability without fault.  This is not the law.

Consequently, because there is no evidence that anything the Sheriff or the City did or failed to do caused any violation here, and because there is no proof that an official "custom" or "policy" was the "moving force" behind the Plaintiff's alleged constitutional deprivation, summary judgment should be granted.  *See Monell*, 436 U.S. at 690-94.

## VI.      INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Count XXI alleges that the City is vicariously liable for the intentional infliction by the individual co-defendants of emotional distress upon Plaintiff. (Doc. 1). This claim is patently frivolous; the Sheriff is clearly entitled to sovereign immunity under Section 768.28(9), Florida Statutes.

To state a claim for intentional infliction of emotional distress under Florida law, a plaintiff must allege: "(1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) proof that the conduct caused the severe emotional distress." *Gonzalez–Jimenez de Ruiz v. United States*, 231 F.Supp.2d 1187, 1199 (M.D.Fla.2002) (*citing Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir.1990)); *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla.1985).

Florida statutory law provides cities with sovereign immunity from suit when certain tort causes of action are brought against it. More specifically, F.S. § 768.28 provides that "[t]he state or its subdivisions shall **not** be liable in tort for the acts or omissions of an officer, employee, or agent ... committed with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a)(emphasis added). Because the "intent or reckless conduct" requirement of the intentional infliction of emotional distress claim "is the equivalent of willful and wanton conduct" described in Fla. Stat. § 768.28(9)(a) as within the scope of conduct subject to sovereign immunity, the claim of intentional infliction of emotional distress against the City is barred by sovereign immunity. *Samedi v. Miami–Dade County*, 134 F.Supp.2d 1320, 1353 (S.D.Fla.2001) (*quoting Williams v. City of Minneola*, 619 So.2d 983, 986 (Fla. 5th DCA 1993)). Accordingly, summary judgment should be entered in favor of the Sheriff on the claim against him for intentional infliction of emotional distress.

In addition, summary judgment should be entered in favor of the Sheriff on this claim for an additional reason. The conduct alleged to have been committed by the individual co-defendants in this case falls far short of satisfying the element of "extreme and outrageous conduct" in the first instance. Secondly, the Plaintiff's level of emotional distress falls well short of "severe." (Plaintiff's dep. Pgs. 44-62). Therefore, the Sheriff would be entitled to summary judgment on this claim even if he and the City did not have sovereign immunity.

## VII. CLAIMS OF PUNITIVE DAMAGES

Municipalities are immune from punitive damages under §1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748 (1981) ("[W]e hold that a municipality is

immune from punitive damages under 42 U.S.C. § 1983.") The City is a municipality incorporated under the laws of the State of Florida. Fla. Stat. § 165.041. Therefore, Buckner may not recover punitive damages against the Sheriff in his official capacity for the alleged violations of 42 U.S.C.§ 1983.

Regarding DPPA, there is no hint in the statute that a fault-free City could be liable vicariously for violations committed by individuals. The opposite is true; DPPA provides punitive damages only if the violator acts with "willful or reckless disregard of the law." This record is devoid of any evidence that the Sheriff or the City did anything to the Plaintiff at all, much less did anything willfully or recklessly. *See Pickler v. Unite,* 542 F.3d 380, 397 (3d Cir. 2008)(court may award punitive damages only upon proof of willful or reckless disregard of the law by the defendant, citing 18 U.S.C. §2724(b)(2)). Moreover, every single one of the policy reasons for not imposing punitive damages on innocent taxpayers discussed in *City of Newport* applies equally to the concept of punishing the City here for alleged violations in which it did not participate and tried to prevent.

Under Florida law, a plaintiff asserting tort claims is not entitled to recover punitive damages against the state, its agencies, or its subdivisions. Fla. Stat. § 768.28(5); *Avallone v. Board of County Comm'r of Citrus County*, 493 So.2d 1002, 1004 (Fla.1986) ("Unlike private tortfeasors, government tortfeasors are not liable for punitive damages or prejudgment interest.") *See also*, *Zabriskie v. City of Kissimmee*, 6:10-CV-70-ORL-19KRS, 2010 WL 3927658 (M.D. Fla. Oct. 4, 2010). Consequently, summary judgment should be granted as to all claims of punitive damages.

## VIII.  <u>CONCLUSION</u>

Assuming for the sake of argument that the co-defendants violated DPPA, Sheriff Rutherford is nevertheless entitled to summary judgment.  A reasonable construction of the statutory language militates against imposing strict vicarious liability regardless of knowledge or fault of the City.  The Section 1983 claim is frivolous, as is the state law claim for infliction of emotional distress.  The Sheriff therefore requests that this Court enter an order granting his motion for summary judgment.

<div style="margin-left: 40%;">

Respectfully submitted,

**OFFICE OF GENERAL COUNSEL**
**CITY OF JACKSONVILLE**

**/s/  *Jon R. Phillips***
**JON R. PHILLIPS, Esquire**
**Trial Counsel**
Deputy General Counsel
Florida Bar No. 273813
Office of General Counsel
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Phone: (904) 630-1700; Fax: (904) 630-1316
Jphillips@coj.net
Attorneys for Rutherford

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of April, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: **N/A**.


/s/  *Jon R. Phillips*
**JON R. PHILLIPS, Esquire**